| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> Thaddeus R. Maciag, Esq., TM/1669 <br> **MACIAG LAW, LLC** <br> 991 U.S. Route 22 West, Suite 200 <br> Bridgewater, New Jersey 08807 <br> 908-704-8800 <br> Attorney for the Debtor | Chapter 7 |
| In re: <br><br>    European Coffee, B.V., <br><br>                                    Debtor. | Case No.: 10-38229(MS) <br> Judge:    Stern <br> Trustee:  Meisel |

### SUPPLEMENTAL CERTIFICATION OF GEORGE H. WILLEKES
### IN RESPONSE TO LETTER FILED FOR THE CHAPTER 7 TRUSTEE

Hearing Date: October 1, 2010, 11:30am

1. I, George H. Willekes, of full age, hereby certify and say:

2. I am the Chief Operating Officer of the Debtor, European Coffee, B.V ("ECBV") I am also one of the three original founders of ECBV, a member of the Board of Directors of ECBV, and a 40% co-owner of ECBV. As such I am familiar with the facts herein.

3. I file this short Supplemental Certification in response to the letter dated September 29, 2010, filed at 4:52pm yesterday by Ben H. Becker, Esq. as attorney for the Chapter 7 Trustee. I am herein just briefly responding to the five substantive questions raised in his letter.

### 1. The Debtor is Insolvent, can not pay its debts as they come due, and can no longer operate as a Going Concern

4. At page 2 Mr. Becker suggests this matter "would appear" to be "predominantly a dispute between equity holders." At page 3, he notes for the record: "movant's position that, but for this filing, ECBV would be an operating entity" I respectfully note that simply is not the case! Per the Certification of Jochem Willekes (PACER #16) the Debtor can not, and is not, paying its debts as they come due, so the numerous general unsecured creditors are at great risk of **disappearance of $1.6 Million in assets that could otherwise be used to pay the creditors.**

5. It is important to note that this is **not** a case of Mr. Calis having stolen control of the company in March so that he and his children could stay on the payroll of a functional, solvent company for many years to come.

6. Rather, what this actually is, is a case where someone, in this case Mr. Calis, steals control of a company for the explicit purpose of bleeding it completely dry of every drop of assets — stealing, as in this case, every drop of cash flow, of work-in-process, of orders-in-process, of inventory, etc. — with the knowing intent of eventually abandoning the broken down shell of the company, once he has deliberately drained it of every asset, and driven it completely out of business.

7. If 78% of the shareholders had not taken over control of the Debtor and filed this Chapter 7 in the United States, there is zero doubt that Mr. Calis intended to file a bankruptcy case in the Netherlands, <u>but only after he had first extracted the $1.6 Million of coffee from the California, New Jersey and Antwerp warehouses, and converted it to his personal use</u>.

8. The estimated $699,000.00 Mr. Calis stole between late January and early May was from orders and business already in process, which I had lined up before then. Mr. Calis, the long-time corporate bookkeeper, is incapable of marketing and trading, so since June he has only averaged approximately $60,000.00 per month in revenue (much of that also on sales previously arranged by me), with about a 10% gross profit margin on sales, thus earning about $6,000.00 per month before overhead.

9. Since ECBV's overhead cost is about $75,000.00 per month, ECBV is thus falling about $69,000.00 per month short of meeting its cash flow needs every month!

10. I do not have precise figures since Mr. Calis refuses to comply with Discovery notices to produce the missing Bank Statements, and the Bank has now frozen the accounts and will not release information. Mr. Calis has copies of course, but he refuses to produce same.

11. Further, the Debtor has now lost all of its Indonesian employees, as detailed in the <u>Certification of Jochem Willekes</u> (PACER #16) and hence ECBV can no longer acquire any new inventory in the field. ECBV is therefore no longer a going concern, and its reputation is so destroyed (see, e.g., the death threats detailed in PACER #16) that ECBV never can be a going concern again.

12. When this case was filed, the current board of Directors, Robert Willekes and myself, did not

have access to financials for a full list of creditors. We still do not, but today are filing an Amended Schedule E and Amended Schedule F, including one additional Priority Unsecured Creditor, and four additional General Unsecured Creditors, totaling <u>$615,000.00 of additional unsecured claims</u>. After this Court appoints an accountant who gains access to books and records, there is no doubt that the accountant and the Trustee will find even <u>more</u> unsecured creditors.

13. For these reasons and those detailed in the <u>Certification of Jochem Willekes</u> (PACER #16) we knew we had no choice than to realize ECBV is simply no longer a going concern.

14. Thus, the only real question here is whether the approximately $1.6 Million in coffee stock inventory in California, New Jersey, and Belgium goes to line Mr. Calis' pockets and further feather his nest in preferential and fraudulent payments and grossly excessive compensation to him and his family, <u>or whether it goes to pay creditors, as it should</u>. That is why Robert Willekes and I obeyed our fiduciary duty to act, filing this Petition as in the best interest of creditors and the Debtor's estate.

## 2. The State court never addressed, never scheduled a hearing on, never heard, and never decided the corporate control issue

15. Also at page 2 of his letter, he questions whether the State court "appeared to accept the authority of Mr. Calis in his capacity as COO to act for the company. Nonetheless, there is yet to be a final determination of anyone's authority to act on behalf of the debtor entity."

16. Mr. Becker is correct, no determination was made. I respectfully note that as of the July 2, 2010 Removal date, Judge Wilson in the State Court never even heard, nor even so much as scheduled a hearing on, our June 10 Motion to address the corporate control and shareholder issues.

17. I respectfully note that I was present in State court in June 2010 when Judge Wilson explained that she was leaving for a long vacation in Italy; had been swamped with foreclosures cases in Chancery; and was dealing with some health problems. In any case, for whatever reason, as of the time of the July 2, 2010 Removal to Federal Court, Judge Wilson had five Motions pending before her since early June, but none of them even so much as had hearing Dates set yet.

18. Hence, Judge Wilson did not even address, let alone decide, those issues on June 17. The only

reference to Mr. Calis was that the COO of the company could act to market the coffee.

19. Per Exhibit H (PACER #21-8) to the Robert P. Willekes certification, Mr. Calis is in any case no longer the COO of the Debtor, ECBV.

20. Perhaps most important, at the time of the June 17 hearing before Judge Wilson, Robert P. Willekes and his 38% shareholding were allied with Mr. Calis and his 22% – Robert Willekes had signed a Certification supporting Mr. Calis in that litigation! Notably, he has since switched sides.

21. The substantive June 17, 2010 hearing decisions were also not even close to a final judgment.

22. As of the Petition Date: They had never even been reduced to a final Court Order (there was only an Interim Order freezing the coffee in place at the California warehouse); were the subject of a pending Motion for Reconsideration on for Oral Argument October 6, 2010; and would thereafter have very likely have been the subject of an Interlocutory Appeal by whoever eventually lost.

23. I am also advised that in any case, the enormous "changed circumstance" of Robert Willekes and his 38% switching sides in the shareholder dispute would, under Third Circuit case law, virtually mandate a revised decision upon the Motion for Reconsideration being decided (even absent all the other grounds for reconsideration, or an Interlocutory Appeal).

24. So the decisions reached at the June 17, 2010 State court hearing were never reduced to a final Order, and were definitely not a final Judgment.

### 3. A Detailed List of the Dates and Amounts of the Preferential and Fraudulent Transfers to Mr. Calis has Already been Filed with this Court

25. At page 3 Mr. Becker states "[t]here is no indication of when those transfers occurred." I think that as the parties were simultaneously ECF-filing papers yesterday afternoon, that list simply had not yet been ECF-filed at the time Mr. Becker filed his letter.

26. I respectfully note that <u>a detailed list</u> of the dates and amounts of the hundreds of thousands of dollars of preferential and fraudulent transfers and grossly excessive compensation to Mr. Calis and his children <u>was already filed with this Court yesterday</u> at Exhibit E (<u>PACER # 21-5)</u> to the Certification of Robert P. Willekes. Copies of the <u>Bank Statements</u> showing those preferential

and fraudulent transfers and grossly excessive compensation will be provided to the Trustee and brought to Court.

27. Also to be provided to this Court and the Trustee will be the June 11 Deposition transcript of Mr. Calis, since I see that Mr. Calis' attorney filed the June 17, 2010 hearing transcript just yesterday, and this Court in context should also have the June 11, 2010 transcript as well.

### 4.   It is simply NOT true that Deutsche Bank, in the State Court litigation, ever claimed a security interest in the coffee inventory; in fact, Deutsche Bank never even alleged such a claim!

28. At page 3 Mr. Becker states "At the heart of the state court litigation was an agreement with Deutsche Bank arising out of the bank's claim to a security interest in the coffee inventory. the petition does not schedule Deutsche Bank as a creditor or a disputed creditor."

29. The confusion over this issue is perfectly understandable.

30. However, it is important to note that in the current New Jersey State court litigation Deutsche Bank has ever, ever even so much as alleged a security interest in the coffee inventory

31. Yes, there was a long-running litigation in the Supreme Court of New York over the status of misfiled UCC-1s by Deutsche Bank against Holland Coffee's ownership (not European Coffee's) of the coffee inventory, but that case was settled back in New York in December 2009, and accordingly in February 2010 Deutsche Bank, in writing, relinquished all of its liens against the coffee inventory.

32. Deutsche Bank has since then **never** ever even once so much as alleged that it still has any kind of security interest in any of the inventory.

33. The myth of the Deutsche Bank lien is concisely but very thoroughly reviewed in PACER Docket #20 in the instant case, being Exhibit A to the Memorandum of Law, and this Court's attention is respectfully directed to same, which correctly explains that Mr. Calis' feverish efforts to get ECBV to preferentially pay Deutsche Bank, has from the outset just been a classic case of , as noted in PACER #20: **"Voidable Preference Law 101"** since the only reason why Mr. Calis has been trying to preferentially pay Deutsche Bank is because they are the only creditor on which Mr. Calis has a personal guarantee!

34. In fact, as referenced in Point 4 of Debtor's Memorandum of Law at PACER #19, at the June 17, 2010 hearing Judge Wilson even acknowledged her awareness that any $300,000 payment to Deutsche Bank was a potential preference claim. Judge Wilson stated that if and when said payment was found to be a voidable preference, "I'm not worried about Deutsche Bank being able to deal with it", clearly implying in context that she believed Deutsche Bank was large enough that it could afford to disgorge a $300,000.00 voidable preference if need be.  See June 17, 2010 Tr. at 69:5 to 70:4

35. We had been advised that Mr. Calis had personally paid off Deutsche Bank in full per his personal guarantee, on August 31, 2010. However, we have since learned that was apparently not the case, so the Deutsche Bank unsecured $300,000.00 claim has been included in the Amended Schedule F, list of General Unsecured Creditors which we are filing today.

### 5.    The insurance binder issue has been resolved.

36. During the months that Mr. Calis had full control of the corporate finances and records, he allowed the insurance on the Debtor's $1.6 Million in inventory to lapse, even as he took $699,000.00 in fraudulent and preferential transfers and grossly excessive compensation out of the company.

37. When Debtor's Attorney learned of that lapsed insurance status late in the afternoon on September 14, 2010, the Petition Date, Mr. Mark Willekes of the Debtor's New Jersey office, working closely with the Chapter 7 Trustee and Debtor's attorney, acted swiftly and expeditiously, and by 9:15am the very next morning.  Once the binder arrived and the Trustee reviewed it, there was a issue over the wording of the binder and the named insureds, which I understand was corrected this morning after Mr. Becker had brought it to our attention yesterday.

I hereby certify that the foregoing facts stated by me are true. I am aware if they are wilfully false, I am subject to punishment.

/s/ George H. Willekes

Date:  September 30, 2010          George H. Willekes